IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DIANNE F. BONANNO, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-01095 (RDA/TCB) |
| ) | |
| HILTON WORLDWIDE ) | |
| HOLDINGS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Hilton Worldwide Holdings, Inc's Motion for Summary Judgment (Dkt. 69). Considering Defendant's Memorandum in Support of the Motion (Dkt. 70), Plaintiffs Dianne and Raymond Bonanno's Opposition to the Motion (Dkt. 81), and Defendant's Reply (Dkt. 88), it is hereby ORDERED that Defendant's Motion for Summary Judgment (Dkt. 69) is GRANTED.

### I. BACKGROUND

The following factual background is undisputed unless otherwise noted. In January 2019, Plaintiffs, who are husband and wife and reside in New Jersey, traveled to Aruba to stay at the Hilton Aruba Caribbean Resort & Casino ("Hilton Aruba Resort"). Defendant Hilton Worldwide Holdings, Inc. is a Delaware corporation with a principal place of business in Virginia.

During their stay, Plaintiff Dianne Bonanno tripped and fell on a walkway near the Hilton Aruba Resort, allegedly "caused by a hazardous pre-existing condition or defect found in the poured concrete walkway's expansion joint." Dkt. 1 at 14. Plaintiffs subsequently filed this suit against Defendant, alleging claims for: (1) negligence; (2) breach of contract; (3)

false/misleading/deceptive advertising under the New Jersey Consumer Fraud Act; (4) common law fraud; (5) joint venture liability; (6) apparent agency; and (7) loss of consortium. *Id*. at 16-26.

Critically, it is undisputed that the walkway where Plaintiff fell is wholly owned by the government of Aruba and sits adjacent to the Hilton Aruba Resort, extending along a public beach and numerous other adjacent hotels and businesses. Defendant does not "own" the Hilton Aruba Resort, which is subject to a Management Agreement between Aruba Caribbean Hotel Limited Partnership and Hilton Worldwide Management Limited. Defendant here—Hilton Worldwide Holdings, Inc.—is not a party to that agreement, but Plaintiffs generally contend that Defendant has some degree of "control" over Hilton Worldwide Management Limited such that liability for failing to maintain the public walkway should be imputed to Defendant.

Defendant filed the instant Motion on August 31, 2021. Significantly, Plaintiffs do not oppose Defendant's Motion for Summary Judgment as to their breach of contract claim, New Jersey Consumer Fraud Act claim, and common law fraud claim (Counts II, III, and IV). On the other hand, Counts V and VI appear to be theories of liability in support of Plaintiff's negligence claim (Count I) as opposed to standalone claims. The Court therefore proceeds by analyzing whether Defendant is entitled to summary judgment on Plaintiffs' premises liability negligence claim (Count I) and loss of consortium claim (Count VII). For the following reasons, the Court concludes that Defendant is entitled to summary judgment.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz v. Prospect Mortg., LLC*,

11 F. Supp. 3d 612, 615-16 (E.D. Va. 2014) (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden" of showing that there is no genuine issue of material fact.  *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists."  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a Court reviews the evidence in the light most favorable to the non-moving party.  *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  Importantly, "at the summary judgment stage[,] the [court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.  ANALYSIS

#### A.  Choice of Law

At the outset, the parties dispute whether the law of New Jersey, Virginia, or Aruba should be applied to Plaintiffs' negligence and loss of consortium claims.  Because this matter was originally filed in New Jersey and later transferred to this Court on an order granting the parties' consent motion to transfer, Plaintiffs argue that New Jersey's choice-of-law rules should be applied, resulting in the Court's application of New Jersey substantive law.  By contrast, Defendant argues that Virginia's choice-of-law rules should be applied, resulting in the Court's application of Aruban substantive law because that is where the slip-and-fall occurred.  Even if New Jersey's choice-of-law rubric is applied, Defendant alternatively argues, the Court should still apply Aruban law.

Ordinarily a court applies the choice-of-law rules of the state where the court sits. *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4th Cir. 1988). But where a choice-of-law question arises in case originally filed in one jurisdiction but later transferred to a different jurisdiction, Plaintiffs argue that the choice-of-law rules of the "transferor jurisdiction" apply, citing *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 369 (4th Cir. 2015).

In *Pender*, the Fourth Circuit held that where a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferor jurisdiction's choice-of-law rules apply, reasoning that "[t]he legislative history of § 1404(a) certainly does not justify the rather startling conclusion that one might get a change of law as a bonus for a change of venue." *Id*. In this case, the record is clear that this matter was transferred from the United States District Court for New Jersey "[p]ursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses, and in the interest of justice[.]" Dkt. 10. Despite Defendant's argument that Plaintiffs advocated for the transfer and that New Jersey District Court was the improper forum, the record is clear that the parties stipulated to transfer under § 1404(a), and "a § 1404(a) transfer is available only when the initial choice of forum is legally sound but the location's impracticality warrants a transfer to ensure the convenient and efficient resolution of the dispute." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 925 (E.D. Va. 2017). Following the rule in *Pender*, the Court must apply the choice-of-law rules of New Jersey, the forum state where this matter was originally filed before being transferred to this Court under § 1404(a).

New Jersey's choice-of-law regime presumes that the law of the place where the injury occurred will govern unless there is a conflict between the law of that place and New Jersey. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 455 (N.J. 2008). If there is a conflict, the Court must determine which jurisdiction has the "most significant relationship" to the matter by considering

the factors set forth by the Restatement (Second) of Conflict of Laws § 145(2) (Am. Law Inst. 1971). *Camp Jaycee*, 962 A.2d at 455; *see also Erny v. Estate of Merola*, 792 A.2d 1208, 1212 (N.J. 2002) (referring to New Jersey's choice-of-law rule as a "flexible . . . analysis to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation."). In the event of a conflict, the Court should consider factors in addition to the place where the injury merely occurred, including the place where the conduct causing injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2).

Even assuming there was a conflict between New Jersey and Aruban law regarding the remaining claims in this case, nothing in the record suggests that New Jersey, or any other state, has a more significant relationship to the occurrence and the parties than Aruba. Indeed, the core of Plaintiffs' claims in this case relies on a *premises* liability theory, where the "premises" at issue in the dispute is in Aruba. Considering the factors set forth by the Restatement (Second) of Conflict of Laws § 145(2), the Court finds that New Jersey's relationship to the dispute is tenuous and fails to overcome the presumption that the law of the place where the injury occurred—Aruba—should apply to Plaintiffs' claims.

Despite the Court's conclusion that the law of Aruba should apply to Plaintiffs' claims,[1] the Court will analyze whether Defendant is entitled to summary judgment on Plaintiffs' negligence and loss of consortium claims under the law of Aruba and New Jersey for thoroughness.

---

[1] Even if Virginia's choice-of-law rules were applicable, as Defendant contends, the Court would have come to the same conclusion that Aruban substantive law applies. *Jones v. R.S. Jones and Assocs.*, 431 S.E.2d 33, 34 (Va. 1993) (recognizing that "lex loci delicti, or place of the wrong, [is the] settled rule in Virginia.").

5

For the following reasons, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' claims regardless of whether the law of Aruba or New Jersey is applied.

B. Premises Liability (Count I)

With respect to Plaintiffs' premises liability claim, Defendant argues that there is simply no evidence that Defendant owned, operated, or controlled the premises where Plaintiff Dianne Bonanno fell, precluding liability under Aruban and New Jersey law. Dkt. 70 at 9. In response, Plaintiffs argue that under New Jersey law, Hilton Worldwide Management Limited may be held liable for maintaining an adjacent public walkway and that its liability may be imputed to Defendant by way of actual and apparent agency theories. Dkt. 81 at 16-25.

When a court is faced with a question of foreign law, under Federal Rule of Civil Procedure 44.1 "[it] may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." In this case, Defendant has submitted the affidavit of Patrick Brown, an attorney admitted to practice law in Aruba, together with certified English translations of relevant portions of Aruban tort law. Dkt. 40.

Aruban tort law generally requires a plaintiff to prove five elements to state a negligence claim: (1) an unlawful act; (2) culpability; (3) damages; (4) causal connection between the act and the damage; and (5) principal of relativity. Dkt. 40 at 5. Under the Aruban Civil Code 6 Art. 174, "[a] possessor of a building or structure which does not meet the standards which, in the given circumstances, may be set for it and thereby constitutes a danger for persons or things, is liable if this danger materialises[.]" Dkt. 40-2 at 2. Very significantly, however, 6 Art. 174 provides that "[a] person who is entered in the public registers as owner of the building or structure of the land, is presumed to be the possessor thereof." *Id*. at 3.

Aruban Civil Code 6 Art. 181 also provides that "where the things, buildings, structures or animals referred to in [Article 174] are used in the conduct of business, the liability referred to . . . falls upon the person conducting such business[.]"  Dkt. 40-3 at 2.  However,

> The cause of the damage has to be in a functional relation to the business that is carried out in or on the premises.  If there is no functional connection between the damage and the business that is carried out in or on the premises, then the responsibility of the possessor of the premises revives.  For example, if an office building is leased out and a roof tile injures a person on the adjacent sidewalk, then the damage has no functional connection with the business carried out in the premises, so that the responsibility falls on the owner of the building.

Dkt. 40 at 7.

The rationale for requiring an injured party to direct its action against one defendant is to "create[] greater clarity about the business risks and avoid[] duplication of insurance."  *Id*.  Unsurprisingly then, Aruban law only permits an entity to be held vicariously liable when that entity has itself undertaken a culpable act.  Dkt. Nos. 40 at 7; 40-6 at 2 ("The mere circumstance that the party concerned is intensively involved in the management is not sufficient, nor is the circumstance that he, as actual manager, has acted "as if he were director.").  Nor does it appear that Aruban law recognizes any alter ego, joint venture, or apparent agency theory in the tort liability context.  Dkt. 40 at 7.

For multiple reasons, Defendant is clearly entitled to summary judgment on Plaintiffs' premises liability claim under Aruban law.  To begin, it is undisputed that Defendant is not the record owner of the resort hotel and that the sidewalk was "public."  And even if a duty were imposed on Hilton Worldwide Management Limited to maintain the public sidewalk, that entity is not a party to this action and Defendant may not be held vicariously liable under Aruban law for any of the theories advanced by Plaintiffs.  Aruban law is clear that only one entity—the record

owner or operator of a premises—may be held liable under its premises liability regime. Plaintiffs' premises liability claim therefore fails under Aruban law.

To be sure, Plaintiffs' negligence claim fares no better under New Jersey law, which generally requires that a plaintiff must prove four elements to establish a claim of negligence: (1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. *Brunson v. Affinity Federal Credit Union*, 972 A.2d 1112, 1123 (N.J. 2009). "Under New Jersey law, to establish premises liability, [a] [p]laintiff[] bear[s] the burden of proving that the premises owner breached the duty of care owed[.]" *Jarrah v. Trump Hotels & Casino Resorts*, 487 F. Supp. 2d 522, 525 (D.N.J. 2007). Plaintiffs primarily argue that, under *Stewart v. 104 Wallace St., Inc.*, 432 A.2d 881 (N.J. 1981), an owner or occupant of a commercial premises has an "affirmative duty to remediate dangers that are not the result of its own conduct or use of its property[,]" such as an adjacent sidewalk. Dkt. 81 at 16-17.

In *Stewart*, the New Jersey Supreme Court specifically held that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." *Stewart*, 432 A.2d at 887.[2] Plaintiffs contend that the duty to maintain a sidewalk imposed by *Stewart* may extend to Defendant because its relationship to the Hilton Aruba Hotel is akin to that of a parent and subsidiary, and that "[a] parent can be held liable for actions taken by its subsidiary under traditional principles of agency . . . upon a showing of control." Dkt. 81 at 18. To that end, Plaintiffs argue a tertiary theory of liability suggesting that, under the Management Agreement,

---

[2] Among other inaccurate citations in the parties' briefing, both Plaintiffs and Defendant cited to this proposition from the *Stewart* case at "42 A.2d 881, 997." In the future, the parties are reminded that they must provide accurate citations to the authority supporting their position. *See* Loc. Civ. R. 7(F).

Hilton Worldwide Management Limited assumed the duty to carry out "all repairs and maintenance" to the Hilton Aruba Resort, and that Defendant controlled the manner in which Hilton Worldwide Management Limited performed those duties. *Id*. at 18-19.

Defendant responds that the rule from *Stewart* is distinguishable here because the walkway where Plaintiff Dianne Bonanno fell was not an area where the Hilton Aruba resort "knew its customer would cross" to reach its business, distinguishing the primary rationale for applying the duty in *Stewart* to a business owner. Dkt. 88 at 14. Second, according to Defendant, even if the duty from *Stewart* could be properly applied to the Hilton Aruba Resort, nothing in the record supports any of Plaintiffs' agency theories seeking to impute that liability to Defendant. *Id*. at 15-20.

The Court agrees with Defendant that there is no basis to apply the duty imposed on commercial landowners in *Stewart* to the Hilton Aruba Hotel, but even if it did, there is also no evidence in the record to support imputing that liability to Defendant. To begin, unlike the case in *Stewart*, there were other walkways available to access the Hilton Aruba Resort. *See Puterman v. City of Long Branch*, 859 A.2d 1246, 1249 (N.J. Super. Ct. 2004) (refusing to apply the duty imposed by *Stewart* on the basis that there were other routes that business customers could take to defendant's business). The walkway where Plaintiff Dianne Bonanno fell was also separate from the Hilton Aruba Resort's main entrance and was adjacent to numerous other commercial businesses. *See id*. at 1250 ("To hold one of many 'benefitting proprietor(s)' responsible for the condition . . . which serves several commercial property owners, would offend notions of fairness.").

Even if the Court found that the *Stewart* duty were properly imposed on the Hilton Aruba Resort, there is also nothing in the record to support Plaintiffs' vicarious liability theories. In this

9

regard, Plaintiffs argue that there is an "actual" or "apparent" agency relationship between Defendant and Hilton Worldwide Management Limited and the Hilton Aruba Resort, pointing to various documents suggesting that Defendant "controlled" certain policies implemented by Hilton Worldwide Management Limited, and by extension of the Management Agreement, the Hilton Aruba Resort. Dkt. 81 at 18-20.[3] Plaintiffs contend that Defendant had the "right" to control the work performed by Hilton Worldwide Management Limited, which entered into the Management Agreement with the Hilton Aruba Resort, giving rise to an agency relationship. *Id*. at 20.

While New Jersey law does recognize that a principal may be held liable for the acts of its agent based on an "actual" or "apparent" agency between the entities, *Intelnet Intern. Corp. v. ITT Corp.*, No. A-6974-03T1, 2006 WL 2192030, at *13 (N.J. Super. Ct. App. Div. Aug. 4, 2006), nothing in record supports imputing liability to Defendant based on Plaintiff's attenuated theory of "control" over the Hilton Aruba Resort—even assuming it had a duty to maintain the sidewalk under *Stewart*. As to Plaintiffs' argument that Defendant should be held liable because it uses the same "Hilton" name as the Hilton Aruba Resort, there is no evidence that Plaintiffs relied on that resemblance, a required element to establish an apparent agency under New Jersey law. *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 374 (D. N.J. 2004) ("To find apparent authority, one must establish that: (1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the

---

[3] Plaintiffs have apparently abandoned their alter ego and joint venture theories to impute liability to Defendant. In any event, for the reasons stated in Defendant's brief in support of the Motion (Dkt. 70 at 16-20), the Court finds that those theories are not applicable to the undisputed facts of this case. Plaintiffs also cite to a Third Circuit case applying Pennsylvania law for the proposition that the "right to control" is determinative of whether an agency relationship exists. *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 782 (3d Cir. 1978). It is unclear to the Court why Pennsylvania law would apply to Plaintiffs' theory that Defendant was in an agency relationship with the Hilton Aruba Resort.

10

agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances.") (citation omitted).

For the foregoing reasons, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' premises liability claim (Count I).

### C.  Loss of Consortium (Count VII)

Aruban law does not recognize a loss of consortium as compensable damages. Dkt. 40 at 8. But even if New Jersey law applied to this claim, New Jersey only recognizes loss of consortium claims as derivative of the injured spouse's personal injury claim. *Alberts v. Gaeckler*, 144 A.3d 80, 89 (N.J. Super. Ct. 2014) ("If a wife's claim for personal injuries fails, the husband would have no independent ground for a consortium claim."). Revealingly, Plaintiffs do not respond to Defendant's argument that it is entitled to summary judgment on the loss of consortium claim, apparently conceding that if Defendant may not be held liable on the premises liability claim, it may not be held liable on the loss of consortium claim. For these reasons, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' loss of consortium claim (Count VII).

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. 69) is GRANTED. The Clerk is directed to enter judgment for Defendant pursuant to Federal Rule of Civil Procedure 58 and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
October 29, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge